(No. 14140.—Judgment reversed.)

THE PEOPLE *ex rel.* Edward J. Brundage, Attorney General, *et al.* Defendants in Error, *vs.* GEORGE BURCHEK, Plaintiff in Error.

*Opinion filed February 22, 1922—Rehearing denied April 13, 1922.*

1. PROHIBITION—*section 22 of Prohibition act of 1921, concerning a temporary injunction, construed.* Section 22 of the Illinois Prohibition act of 1921, authorizing a temporary injunction to issue *ex parte* against the owner or tenant of any building where intoxicating liquor is manufactured or sold, and providing for a preliminary hearing, of which the defendant shall be given five days' notice, contemplates that upon granting the writ the court shall set the case for preliminary hearing on the question whether the injunction shall be continued in force and give the defendant five days' written notice of the date of the preliminary hearing.

2. CONTEMPT—*when rule that an injunction, though erroneous, is binding does not apply.* The rule that an injunction erroneously issued by a court having jurisdiction is not void but is binding and valid on the party against whom it is issued until reversed or set aside does not apply to a temporary injunction issued *ex parte* under section 22 of the Illinois Prohibition act of 1921, where the violation of the injunction occurs ten days after the issuance of the temporary writ, without any preliminary hearing or notice thereof being given the defendant.

WRIT OF ERROR to the County Court of Sangamon county; the Hon. JOHN B. WEAVER, Judge, presiding.

L. E. STONE, (WILLIAM ST. J. WINES, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, C. F. MORTIMER, State's Attorney, and LAWRENCE Y. SHERMAN, (GEORGE C. DIXON, FLOYD E. BRITTON, and H. E. FULLENWIDER, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error is sued out to review a judgment of the county court of Sangamon county adjudging plaintiff in error guilty of contempt of court under the Illinois Pro-

hibition act, passed by the legislature in 1921 and in force July 1 of that year. The writ was sued out of this court on the ground the constitutionality of the statute is involved. The act provides for punishment of a person convicted of a violation of it by a fine of not less than $100 nor more than $1000 or imprisonment not less than sixty days nor more than six months, and for a second offense a fine of not less than $500 nor more than $1500 and imprisonment. in the penitentiary not less than one nor more than two years. It also authorizes an action in equity in the county court to enjoin the defendant from conducting or permitting the continuance of a nuisance, and on filing the bill, if it is made to appear to the satisfaction of the court, by affidavit or otherwise, that such nuisance exists, a temporary writ may issue enjoining the nuisance until the trial on the merits.

We understand some of the facts not shown by the record but about which the parties do not disagree, are, that on the night of July 2, 1921, a warrant was issued by a justice of the peace for the search of the dwelling house of plaintiff in error and he was arrested for the sale of intoxicating liquor. That case does not appear to have ever been tried. Plaintiff in error says it was dismissed by the State's attorney July 8, and that statement is not denied by defendants in error. The first thing which the record shows is, that what is called an information in chancery was filed in the county court July 8 by the Attorney General and the State's attorney of Sangamon county, alleging Joseph F. Burczik was the owner of certain premises described and that plaintiff in error was his tenant in possession; that since July 1 plaintiff in error had openly and notoriously in violation of law manufactured and sold intoxicating liquor in and upon said premises, and the building thereon had been since July 1 continuously used as a place for the illegal manufacture and sale of intoxicating

liquors, and that Burczik had permitted the building to be so used. The information alleged such use of the building should be temporarily restrained until the case could be heard and that the temporary writ should be issued without bond. The bill alleged the complainants were without remedy "except in a court of equity," and prayed that plaintiff in error, and Burczik, who was made a defendant, be required to answer, and that upon a hearing the premises described be declared a common nuisance and the nuisance abated, and that defendants be perpetually enjoined from using or permitting the use of the premises as a place where intoxicating liquors are manufactured or sold and from using the premises for storing liquor in any quantity whatever, and that defendants be enjoined until the further order of the court from keeping the premises open for any of the purposes aforesaid and from maintaining a similar nuisance as the one described at any other place in Sangamon county. A temporary writ of injunction was granted, without notice to defendants, on the same day.

The abstract shows the People filed an affidavit of C. W. Jesberg that he is a police officer and with others searched plaintiff in error's home July 2, 1921, and found whisky in bottles and jugs in various places in the house. Some of the bottles were half-pints, some pints and some quarts, —in all a considerable quantity. There is also in the record a statement under oath by plaintiff in error that he had been selling "white mule" since January 1, 1921; that he had sold an average of two gallons a month at twenty-five cents a drink, and he did not know the person from whom he bought the whisky. The record does not so show, but the affidavit and the statement of plaintiff in error were presumably filed when the bill for injunction was filed and presented to the court. The affidavit of the police officer was sworn to July 5, and the statement of plaintiff in error was sworn to, according to the record, July 1, which was the day before the search warrant was issued.

On July 18, 1921, the People filed in the county court the affidavit of the State's attorney, alleging that the temporary writ of injunction was served on plaintiff in error July 8; that on July 15 George Robeck purchased of plaintiff in error on said premises two drinks and one pint bottle of whisky and paid him twenty-five cents for each drink and $1.75 for the pint. The affidavit further averred that since the plaintiff in error was served with the writ of injunction he had sold intoxicating liquor to other persons on the premises, and affiant prayed that a warrant issue for the arrest of plaintiff in error for violation of the temporary injunction. An affidavit of Robeck was filed, in which he stated that on Friday night, July 15, he went to the house of plaintiff in error and there purchased from him two drinks of whisky, for which he paid twenty-five cents each, and also a pint of whisky, for which he paid plaintiff in error $1.75. The affidavit of Anton Norkis was filed, in which he stated he was at plaintiff in error's house Friday night, July 15, and saw two men buy of him two drinks each and pay him twenty-five cents a drink, but he did not know the men.

When plaintiff in error was brought before the court he moved to quash the "information" filed charging him with violation of the injunction, on several grounds assigned, among them that the court had no jurisdiction to issue the writ, that the statute under which it was issued is unconstitutional, and that section 23 of the statute is unconstitutional in that it purports to confer chancery jurisdiction on county courts. The court overruled the motion and adjudged plaintiff in error guilty of contempt. On motion of his counsel he was allowed two days to purge himself of contempt, and he filed his own affidavit denying George Robeck was at his home July 15; denying Robeck purchased whisky or other intoxicating liquor from or paid him any money, and denying he, his agents or servants had sold any intoxicating liquor to any person or persons since

he was served with the writ of injunction; that Robeck, while in company of Anton Norkis on the right of way of the Illinois Central Railroad Company, and while drunk, had accused plaintiff in error of taking $40 from him, and threatened if he did not give him said sum he would report to the State's attorney that plaintiff in error was selling liquor illegally. Plaintiff in error also filed the affidavits of four other persons. One of them stated he was at home next door to plaintiff in error's house all evening July 15 and plaintiff in error's house was closed up about nine o'clock; that he saw no visitors there and believed no one was at home at plaintiff in error's house. One of them stated he went to plaintiff in error's house about 9:30 the evening of July 15 to get his washing and there was no one there but Mrs. Burchek; that while there he heard men talking in a loud manner two or three blocks away; that he had been at the home of plaintiff in error every day since July 8 and had never seen any intoxicating liquor sold there. Two of the affiants stated they knew plaintiff in error, Anton Norkis and George Robeck; that the evening of July 15, between nine and eleven o'clock, they saw them and plaintiff in error sitting along the right of way of the Illinois Central Railroad Company; that the affiants stopped and talked with them about fifteen minutes and during that time no whisky was sold to anyone. The court adjudged and decreed plaintiff in error had failed to purge himself and sentenced him to pay a fine of $500 and to be confined in the county jail ninety days and to stand committed till the fine and costs were paid.

The temporary writ of injunction was issued and served July 8. On July 18, ten days after the temporary injunction was granted and the writ served, the court, on the petition of the People, issued a warrant for the arrest of plaintiff in error for violation of the temporary injunction. No notice had been given defendant or a hearing had on the question whether the temporary injunction should be dis-

solved or remain in force until the final hearing of the cause, as required by section 22 of the statute. That section on that question reads: "Upon the granting of said temporary injunction and five days' written notice being given to the defendant, the court shall set the matter down for a preliminary hearing on the question of whether said temporary injunction shall be dissolved or remain in full force until the final hearing of the cause. At such hearing both parties to the action shall have the right to present evidence in the form of affidavits or oral testimony. If the hearing shall be continued at defendant's instance, the temporary writ as prayed for shall be granted as a matter of course. After said hearing for temporary injunction, the court shall dissolve the temporary injunction, if it finds that the injunction was improvidently granted. If the court shall find on such hearing that such nuisance exists, it shall order that said temporary order shall stand; and shall further order that the room or place where such violation occurred shall not be occupied or used for any purpose pending the hearing of the case on its merits, and that the property be held in status (quo)." (Laws of 1921, p. 690.)

The statute provides that on granting the temporary writ, and five days' written notice given defendant, "the court shall set the matter down for a preliminary hearing" whether the preliminary injunction shall be dissolved or continued in force till the final hearing. If the preliminary hearing is continued at the instance of defendant the temporary injunction shall continue in force. No notice having been given plaintiff in error of a preliminary hearing and none having been had, the continuance of the injunction in force beyond five days after it was issued was not the result of any act of plaintiff in error nor was it by virtue of any order of the court. This presents the question, not whether the court had jurisdiction to issue the preliminary writ, but whether, if it did have such jurisdiction, the injunction continued in force beyond the five-

day period in the absence of any notice having been given of a preliminary hearing or opportunity afforded for such hearing.

It will be noticed the alleged violation of the preliminary injunction was ten days after the writ was issued and served. Section 21 declares that any room, house or building where intoxicating liquors are manufactured or where a single unlawful sale is made is a common nuisance, and it may be proceeded against as such and abated. Section 22 provides that the action shall be by injunction, and if it is made to appear to the satisfaction of the court, by affidavits or otherwise, that such nuisance exists, a temporary injunction shall issue forthwith restraining the conducting or permitting the continuing of the nuisance until the conclusion of the trial of the cause. Then follows the provision above set out requiring five days' notice to be given of a preliminary hearing. Section 22 further provides that no bond shall be required to institute such proceeding, and if on the trial the court finds the allegations of the petition are true, it shall order that no liquor shall be manufactured or sold in such place or building and that it be not occupied for one year. The statute authorizes the proceeding by injunction against the owner of a building occupied by a tenant and the tenant jointly. In this case the bill alleged Joseph Burczik was the owner of the building and that he permitted it to be used for said illegal purposes by plaintiff in error, and both were made defendants and the preliminary injunction issued against both of them. The temporary injunction commanded them not to keep or permit the building to be kept open for the unlawful purposes mentioned, but they were not enjoined from continuing to use it as a place of residence. There has been no final trial of and decree in the case, and Burczik is not here complaining.

We have set out the substance of certain provisions of the statute, from which it will appear the temporary writ

is summarily granted. The injunction is authorized without notice, without bond and without any investigation and determination of any court whether the nuisance in fact exists. The remedy is against the owner of the property as well as his tenant in possession, and both may be deprived of the use of the property, on the final hearing, for one year. In view of the summary proceedings provided for granting the temporary writ and the character of the judgment authorized, the provisions we have quoted from section 22 appear to have been enacted for the purpose of affording some protection to a defendant. While the temporary writ of injunction is authorized on an *ex parte* application, it was intended it should be valid and binding until a preliminary hearing was afforded the defendant for the purpose of determining whether the injunction should be continued in force or dissolved. When the temporary writ is issued it is made the duty of the court to set the matter down for a preliminary hearing to determine whether the injunction shall further continue in force and at the same time give the defendant five days' notice of the date set for the hearing. If on the preliminary hearing the court finds such nuisance exists it shall order the temporary writ to stand, and that the room or place where such violation occurred shall not be occupied or used for any purpose pending the hearing of the case on its merits, and that the property be held *in statu quo.* While a court may be satisfied, on an *ex parte* hearing, that facts exist which warrant the issuance of the temporary writ, the statute recognizes that the remedy is drastic against both owner and occupant of the property, and its continuance in force beyond the time required for a preliminary hearing and without defendant ever having an opportunity to be heard might be a denial of due process of law, and the preliminary hearing was provided for in order to afford defendant an opportunity to be heard and to show the temporary writ had been improvidently issued. It seems to us the statute con-

templates that to continue a temporary injunction so issued in force there must be a preliminary hearing and an order of the court to that effect. That is defendant's first opportunity to deny that he was maintaining a common nuisance. If such is not the purpose and effect of that provision of the statute it would seem it is meaningless, and the preliminary injunction will remain in force until the cause is heard on its merits.

We construe the statute to mean that "upon the granting" of the temporary writ the court shall then set the case for a preliminary hearing on the question whether the injunction shall be continued in force and give the defendant five days' written notice of the date of the preliminary hearing. The statute does not require the preliminary hearing to be held five days after the writ is granted, but means that "upon granting" the temporary writ the court shall at that time set a date for the preliminary hearing, of which defendant shall be given five days' notice. The hearing may for good cause be continued beyond the date originally fixed, such as failure to get service on the defendant, or if for any valid reason the parties, or either of them, shall not be prepared to proceed on the day set, and during such continuance the injunction will remain in force. As we construe the statute, if its provisions as to a preliminary hearing are complied with, the temporary injunction will continue in force until such hearing, and if those provisions are not complied with, the injunction ceases to be valid and binding. If that it not so it is difficult to see the purpose of putting such provision in the act. Obviously, then, the authorities holding that an injunction erroneously issued by a court having jurisdiction is not void but is binding and valid on the party against whom it issued until reversed or set aside are not applicable here. The alleged violation of the preliminary injunction in this case was, as we have said, ten days after it was issued and served, and there never has

been any preliminary hearing or notice given that the cause was set down for any such hearing.

Some of the grounds alleged against the constitutionality of the act or certain of its sections are not here involved and none of them are necessary to a decision of this case.

The judgment of the county court is reversed.

*Judgment reversed.*